# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee,*

PETER KIRITCHENKO,
　　　　　　*Intervenor,*

　　　　　　v.

PAVEL IVANOVICH LAZARENKO, aka
Pavlo Ivanovych Lazarenko,
　　　　　　*Defendant-Appellant.*

No. 08-10185

D.C. No.
3:00-cr-00284-
CRB-1

ORDER
AMENDING
OPINION AND
DENYING
PETITION FOR
REHEARING AND
AMENDED
OPINION

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted
August 10, 2010—San Francisco, California

Filed November 3, 2010
Amended December 2, 2010

Before: Susan P. Graber, Consuelo M. Callahan, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Graber

19139

**COUNSEL**

Dennis P. Riordan, Riordan & Horgan, San Francisco, California, for the defendant-appellant.

Peter B. Axelrod, Assistant United States Attorney, San Francisco, California, for the plaintiff-appellee.

George D. Niespolo and Stephen H. Sutro, Duane Morris LLP, San Francisco, California, for the intervenor.

**ORDER**

The opinion filed November 3, 2010, is amended as follows:

On slip opinion page 18160, replace footnote 3 with the following: "The government filed an information against Kiritchenko. As part of a plea deal, he testified for the government at Lazarenko's trial."

With this amendment, Kiritchenko's petition for rehearing is DENIED. The current deadline for filing petitions for rehearing and rehearing en banc remains in effect.

---

## OPINION

GRABER, Circuit Judge:

Defendant Pavel Ivanovich Lazarenko, former Prime Minister of Ukraine, was convicted of money laundering and conspiracy to commit money laundering. *See United States v. Lazarenko*, 564 F.3d 1026 (9th Cir.), *cert. denied*, 130 S. Ct. 491 (2009). In this appeal, Lazarenko challenges the district court's order of restitution of more than $19 million to his co-conspirator, Peter Kiritchenko. We hold that, in the absence of exceptional circumstances, a co-conspirator cannot recover restitution. Because no exceptional circumstances exist here, we reverse and vacate the order of restitution.

### FACTUAL AND PROCEDURAL HISTORY

This appeal is the latest in a series related to Lazarenko's now-infamous exploitation of his political power in Ukraine. *See Lazarenko*, 564 F.3d 1026 (main criminal appeal); *United States v. Lazarenko (Liquidators)*, 476 F.3d 642 (9th Cir. 2007) (interlocutory appeal concerning forfeited funds); *United States v. $1,379,879.09 Seized from Bank of Am.*, 374 F. App'x 709 (9th Cir. 2010) (unpublished decision) (appeal from award of attorney fees in civil-forfeiture action); *Universal Trading & Inv. Co. v. Lazarenko*, 352 F. App'x 210 (9th Cir. 2009) (unpublished decision) (civil appeal involving challenges to forfeited funds); *Universal Trading & Inv. Co. v. Kiritchenko*, 346 F. App'x 232 (9th Cir. 2009) (unpublished decision) (same), *cert. denied*, 130 S. Ct. 3504 (2010). The United States indicted Lazarenko on 53 counts, including one count of conspiracy to commit money laundering and seven

money-laundering counts. The district court dismissed many of the counts, but the jury convicted Lazarenko on all remaining counts and, on appeal, we overturned all convictions except the eight related to money laundering. *Lazarenko*, 564 F.3d at 1047.

In a proceeding separate from the main sentencing proceeding, Kiritchenko sought restitution under the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A, and the Victim and Witness Protection Act of 1982 ("VWPA"), 18 U.S.C. § 3663 (collectively, "restitution statutes").[1] Lazarenko opposed restitution. The government appeared at the proceedings but repeatedly declined to provide input. As noted by the district court, the government "neither endorse[d] nor object[ed] to Kiritchenko's request for restitution."

The district court held that Kiritchenko was a "victim" under the MVRA and VWPA and therefore was entitled to restitution. The court ordered Lazarenko to pay Kiritchenko more than $19 million in restitution. Lazarenko timely appeals. On appeal, the government now opposes restitution.

## STANDARDS OF REVIEW

"A restitution order is reviewed for an abuse of discretion, provided that it is within the bounds of the statutory framework. Factual findings supporting an order of restitution are reviewed for clear error. The legality of an order of restitution is reviewed de novo." *United States v. Marks*, 530 F.3d 799, 811 (9th Cir. 2008) (internal quotation marks omitted). We review de novo the district court's conclusion that a person is a victim for purposes of the restitution statutes. *United States v. Sanga*, 967 F.2d 1332, 1334 (9th Cir. 1992).

---

[1]There are other restitution statutes, including the Crime Victims' Rights Act, 18 U.S.C. § 3771. Except where otherwise noted, we use the term "restitution statutes" to refer to the MVRA and the VWPA only.

## DISCUSSION

**[1]** The MVRA provides that, "when sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1).[2] Subsection (c) describes, among other crimes, "an offense against property under this title, . . . including any offense committed by fraud or deceit." *Id.* § 3663A(c)(1)(A)(ii). The parties (and we) all agree that Lazarenko's convictions qualify as an offense against property. The question, then, is whether Kiritchenko qualifies as a "victim."

**[2]** Kiritchenko's relationship to Lazarenko's criminal activity is somewhat complex. According to the government, Lazarenko used his political power to crush Kiritchenko's business competition. In exchange, Kiritchenko paid Lazarenko kickbacks from his enormous profits. Both profited handsomely from the arrangement. The government's indictment charged Lazarenko with conspiring to launder money with Kiritchenko, and the jury found the existence of that conspiracy.[3] As part of the proof of money laundering, however, the government was required to prove that Lazarenko obtained the money through some specified unlawful conduct. The government alleged, and the jury found, that Lazarenko obtained the money illegally by means of extortion:

---

[2]The VWPA uses similar text but, instead of the mandatory phrase "shall order . . . restitution," 18 U.S.C. § 3663A, the VWPA instructs that the court "may order . . . restitution," 18 U.S.C. § 3663. The definition of the term "victim" is the same for both statutes. *United States v. Brock-Davis*, 504 F.3d 991, 999 n.4 (9th Cir. 2007). Because, for purposes of this case, there is no material difference between the two statutes other than the mandatory nature of the MVRA, we analyze the issue under the MVRA. The analysis applies equally to the VWPA.

[3]The government filed an information against Kiritchenko. As part of a plea deal, he testified for the government at Lazarenko's trial.

Lazarenko extorted money from Kiritchenko.[4] In sum, in the money-laundering scheme, Kiritchenko was both a victim and a participant.

**[3]** This situation is exceedingly rare. With most crimes, a person is plainly either a victim or a co-conspirator (or neither). It is only in the most unusual circumstances that a person can be considered to be both at the same time. We turn, then, to the bizarre question whether Kiritchenko—a co-conspirator in the crimes of conviction—is nevertheless also a "victim" under the restitution statutes.

**[4]** Perhaps because the situation is so unusual, the restitution statutes do not speak to this issue. The MVRA defines the term "victim" as follows:

> For the purposes of this section, the term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663A(a)(2).[5] That definition looks only to whether the person was harmed; it does not consider whether

___

[4]The district court found that Kiritchenko was not a willing participant in the extortion, and that factual finding is not clearly erroneous.

[5]Lazarenko argues that money laundering generally is considered a victimless crime but, even if that assertion is true in some sense, the restitution statutes define "victim" broadly. *See Brock-Davis*, 504 F.3d at 998-99 (explaining the history of this definition and describing its breadth). As part of the conspiracy to launder money, Lazarenko extorted money from Kiritchenko. Accordingly, Kiritchenko qualifies as a "victim" under the plain text of the restitution statutes. *See* 18 U.S.C. § 3663A(a)(2); *Brock-Davis*, 504 F.3d at 999.

the person also was a co-conspirator. Under the plain text of the MVRA and VWPA, therefore, co-conspirators have just as much right to restitution as do innocent victims.

**[5]** But courts have recognized that Congress could not have intended that result. Otherwise, the federal courts would be involved in redistributing funds among wholly guilty co-conspirators, where one or more co-conspirators may have cheated their comrades. Indeed, the Second Circuit has held that an order of restitution from one co-conspirator to another was "an error so fundamental and so adversely reflecting on the public reputation of the judicial proceedings that we may, and do, deal with it *sua sponte*." *United States v. Reifler*, 446 F.3d 65, 127 (2d Cir. 2006); *see also United States v. Weir*, 861 F.2d 542, 546 (9th Cir. 1988) (suggesting that it would be improper to consider a participant to a crime as a victim of the crime for purposes of restitution). In other words, because a literal application of the plain text leads to absurd results, the plain text does not control.[6] *United States v. King*, 244 F.3d 736, 740 (9th Cir. 2001).

**[6]** The question, then, is the scope of restitution to a co-conspirator. Guided by our decision in *Sanga*, 967 F.2d at 1334-35, we hold that, in the absence of exceptional circumstances, a co-conspirator cannot recover restitution for crimes in which he or she participates.

---

[6]Kiritchenko points out that the VWPA limits restitution for victims of certain drug crimes with the following clause: "in no case shall a participant in an offense under such sections be considered a victim of such offense under this section." 18 U.S.C. § 3663(a)(1)(A). There is no conflict between that clause and Lazarenko's interpretation of the statute as generally barring restitution for participants of crimes, except in rare circumstances. The quoted clause means that, for those specified drug crimes, there is *no* exception for rare circumstances: *All* participants, even minor participants, are barred from restitution. The quoted clause is not superfluous and does not change the (undisputed) fact that the plain text of the MVRA leads to the absurd result that federal courts would redistribute funds among co-conspirators.

In *Sanga*, the defendant was convicted of a conspiracy to smuggle aliens from the Philippines to Guam. *Id.* The district court ordered restitution to one of the aliens whom the defendant had smuggled, named Quinlob, and the defendant appealed. *Id.* at 1333-34. After Quinlob arrived in Guam, the defendant instructed her that she would be his live-in maid. *Id.* at 1334. When she said that she wished to return to the Philippines instead, he took away her passport and airline ticket and threatened to kill her. *Id.* at 1334-35. After two years of servitude, "working approximately fourteen hours a day, seven days a week," the defendant "forced her to have sex with him" so that, in exchange, she could work elsewhere. *Id.* at 1335.

The defendant argued that, as co-conspirator to the alien smuggling, Quinlob was not entitled to restitution. *Id.* at 1333-34. We agreed that Quinlob was a very limited co-conspirator, having agreed to, and having acted to facilitate, her own smuggling into Guam. *Id.* at 1334-35. But we found that, considering all the facts of that case, Quinlob was not barred from recovery simply by virtue of having been a co-conspirator initially. We noted that "Quinlob was not named as a conspirator in the indictment." *Id.* at 1334. And we held that "[a]ny criminal complicity in the conspiracy which Quinlob might bear stopped at the point at which she became the object of, rather than a participant in[,] the criminal goals of the conspirators." *Id.* at 1335. Because Quinlob "did not willingly participate in the criminal behavior by which she was victimized," we distinguished the dicta in *Weir*, 861 F.2d at 546, in which we had suggested that it might be improper to consider a participant in a crime as also a victim of that crime. *Sanga*, 967 F.2d at 1335 n.1.

Kiritchenko latches onto our statement that Quinlob could receive restitution because she "did not willingly participate in the criminal behavior by which she was victimized." *Id.* Kiritchenko argues that, because he did not willingly participate in Lazarenko's extortion (of Kiritchenko), then he is enti-

tled to restitution, just as Quinlob was entitled to restitution for the defendant's post-smuggling mistreatment of her. More generally, Kiritchenko argues that we should adopt the rule that a co-conspirator/victim is entitled to restitution whenever the harm arose from criminal conduct *in which he or she did not participate*. We disagree.

Our decision in *Sanga* did not hinge solely on Quinlob's non-participation in the victimizing behavior. Our analysis was informed by the fact that Quinlob was not named as a co-conspirator in the indictment; that she had a very minor role in the conspiracy; and that her persecution began *after the completion* of her small part of the conspiracy. Although she was technically a co-conspirator, her very small role was unconnected to the overall conspiracy; indeed, had she known the full extent of the conspiracy—that she would be forced to be a slave and rape victim—she would not have entered the conspiracy.

**[7]** Here, by contrast, the government named Kiritchenko as the primary co-conspirator in the indictment. Kiritchenko willingly participated in most of the conspiracy, unlike in *Sanga*. Indeed, Kiritchenko knowingly participated in the conspiracy even though he knew that his own *past* "victimization" was the basis of the laundered money, unlike in *Sanga*, where Quinlob immediately sought to withdraw from the conspiracy and return to the Philippines once she discovered the true purpose of the conspiracy. And Kiritchenko, unlike Quinlob, profited greatly from the overall criminal enterprise. *Cf. United States v. Hunter*, 618 F.3d 1062, 1064 (9th Cir. 2010) ("The purpose of restitution under the MVRA . . . is not to punish the defendant, but to make the victim whole again by restoring to him or her the value of the losses suffered as a result of the defendant's crime." (alteration and internal quotation marks omitted)). In short, Kiritchenko's deep and willing complicity in the heart of the conspiracy, following his initial victimization, sharply distinguishes this case from *Sanga*.

We agree with the Second Circuit that, as a general rule, an order of restitution to a co-conspirator is a "fundamental" error that "adversely reflect[s] on the public reputation of the judicial proceedings." *Reifler*, 446 F.3d at 127. Indeed, we suggested the same in *Weir*, 861 F.2d at 546. Only in exceptional circumstances would Congress have intended that a co-conspirator to a crime be entitled to restitution. We addressed just such a case in *Sanga*, of course. But the extreme facts of that case and our mode of analysis demonstrate that it was an exceptional case that proved the general rule.

**[8]** We hold that, as a general rule, a participant in a crime cannot recover restitution. The circumstances here do not constitute exceptional circumstances warranting departure from that general rule. Accordingly, we reverse the district court's decision to the contrary, and we vacate the restitution order.

**REVERSED**; restitution order **VACATED**.